Ready? Ready. Good morning, Your Honor. We intend to reserve any approximately five minutes, possibly more, for our rebuttal argument. Let me tell you, first off, that the District Court in Guam has crafted a new rule of law that must be reversed, and let me tell you why. We have filed timely the in-rem claims against the Chloe Z Vessel. We then proceeded to trial in July of 1996, and all parties agree, including the Court, that our in-rem claims were pending in July of 1996. You filed them in 1994, is that right? Correct. No, no, no. We filed them before 94. The incidents occurred in 91 and 92, so we have three years from those dates. But we filed them, I believe, before 94, but it might have been about then. I thought it was 94. Well, we certainly — It was so within the three years, but I thought it was — Within three years, no question about that. We were within three years. In any regard, once we filed those claims, they were clearly pending. Then comes July of 96, and an event occurs. Another creditor arrests the Vessel on July the 5th, 96. Now, that should have given us the security of knowing that the Vessel was secured by the Court. And instead, what that has done on the operation of this case, it has deprived us of that pending in-rem claim. Because when that other creditor arrested the Vessel while our claims were pending, that started a new statute of limitations in the arrest of action and deprived us of our pending in-rem claims. Now, that's wholly unfair and wholly inequitable. Let me talk specifically about what the Court determined in the determination of the July 96 events. The Court, that is the district court in Guam, has essentially found that equitable estoppel existed. It existed until, in the Court's definition, July the 11th, 96, at least. The Court, in Findings of Fact No. 29 and Conclusion of Law 9, holds that we, that is, Milestone Project, could have arrested the Vessel on July the 11th of 96. That tells us two things. One, it tells us the in-rem claims were certainly pending at that time. And secondly, it says that they must be estopped from asserting the statute of limitations in July of 96. Now, somehow, illogically, five months later, in December of 96, the Court has now found in its decision that the in-rem claims are no longer justified and that equitable estoppel no longer applies. I want the Court to understand what happens from July of 96 to December of 96. On July the 28th, Judge Cunar, sitting by special designation in this Court, found the second verdict in the Modest Project case, July 28th, 96. So we got our verdicts in the in personam cases only. On August the 10th, we got judgments. There were then motions to vacate the judgments filed, and those were ruled by Judge Cunar in September of 96. We are now approaching October 96, and in October 96, we file a motion to consolidate. That is, take the pending in-rem claims and move them into the arrested action, and take the pending in personam judgments and move them into the arrested action. Unfortunately, the District Court denied that motion to consolidate, but suggested to us that we file a motion to intervene. And so we did file a motion to intervene on December the 2nd of 96. When we filed that motion to intervene, that is, asserting our in-rem claims as well as our in personam claims, the Court held that they were equitably estopped. Now, the Court reversed that decision in April of 04, and that's why, of course, we are here today. But I think the Court must reach some very obvious conclusions of law in this case, one that certainly the in-rem claims were pending in July of 96. And I will address those reasons if you doubt for any reason. But even the defendants in their brief state in bold black letters, the in-rem claims were pending in July of 96. Why were we not allowed to assert our in-rem claims? Because another creditor arrested the vessel, and that started the statute of limitations running again in that arrested action, and we were not allowed to join that action. The intervention is a method by which — Doesn't your statute run from the time of the injury to the sealant? It does. And that — the injuries were in 91 and 92, so the statute of limitations on the filing of the claims only runs in 94 and 95. There is no statute of limitations on arrest. Nor should there be, because these are not houses that we are seizing. These are vessels. And when a vessel was very, very productive, as the Cloisy was in July of 95, it is not going to be in port very often. It's going to be at sea constantly, and it's going to have very, very few opportunities to arrest. Now, the point is that we really are depriving not only us, but this decision deprives anyone else who looks at this decision of the right to maintain in-rem claims, because we filed those claims, and there is — and we met the statute of limitations. But in this case, the statute of limitations is being used as a bar to our proceeding. Now, I think it's key to note also that — Did you brief to the first panel which reversed the question of tolling? I'm sorry. I didn't hear. I didn't hear. I didn't hear your question. I'm sorry. Did you brief to the first panel which made the reversal this issue of tolling? No. Claims were tolled. I don't — I don't believe we did. The — well, I know that the issue of equitable — It was under the impression you did. Well — But you tell me what happened. That — that panel was the panel you're — you're talking — I've had — this is my fourth argument in the — on this case over the last 12 years. But you're talking about the last time we were in front of the Ninth Circuit. Is that correct? That's right. At that time, the decision of the Ninth Circuit was simply to send it back to the trial court to consider the — But we didn't brief this issue to that panel. I don't believe we did. I don't believe that that issue was addressed at that time. And it was my understanding that we were being sent back with the assumption that the interim claims were pending in July of 96, and that's why we were getting — The panel didn't discuss that at all, did it? No, I don't believe the panel addressed that issue. That is, the Ninth Circuit panel did not address that issue. Go on, please. All right. The procedure of what has occurred has really deprived us of our interim remedy. And we believe that the standard of review in this case is one of de novo. And we say that because we believe the court has reached conclusions of law as to the statute of limitations and as to the predominant legal issues that exist in place of just — in place of the factual determinations in hearing that occurred. We are being put out after 12 years of litigation not because of really the equitable estoppel ruling, but because of the statute of limitations. The assertion of the statute of limitations in the arrest of action is really what precludes us from being able to proceed with our justified interim claims. You're not pleading an equitable tolling claim. You're pleading that there simply was tolling. Is that right? Well, the — this Court talks about the differences between equitable tolling, equitable estoppel, and fraudulent concealment, and even admits that there is a lot of overlapping and there's a lot of somewhat ambiguity that exists between those three terms. In particular, the SOCOP-Gonzalez v. INS case is one that talks extensively about equitable tolling. The question is, are you seeking relief here under an equitable tolling theory? Can you answer yes or no to that? Well, equitable tolling deals with when the plaintiff doesn't know that a statute — that they have a cause of action. We knew we had a cause of action. In fact, we filed. The answer is you're not pleading equitable tolling. Is that correct? I think not. Because I don't think under this Court's definition of equitable tolling, I don't think it applies. However, the Court found in Gonzalez equitable estoppel in a very similar set of facts, and it did so en banc, 9-2, when it found that despite the underlying finding that there was no equitable estoppel, this Court moved and found that there was equitable estoppel and talked about the ambiguities that exist between those three terms. But the Court did go ahead and find that there was equitable estoppel, and we believe in that case, that is, the Gonzalez v. INS case, and we believe appropriately so should do it here. The major problem that is created by the holding of the district court and the affirmance of this court of that holding is that if you affirm, you have said to all people who file in rem claims, you must file the in rem claim within three years. That's a period of limitation. But you must also arrest within that three-year period. And if you fail to arrest within that three-year period, then as the statute of limitations becomes a bar, anyone else who arrests that vessel, any other creditor, no matter how small, can arrest that vessel and defeat your pending in rem claims, because that's exactly what occurred in this case. On July the 5th of 1996, our in rem claims were defeated by the arrest by another creditor, the mortgage holder, who was in a much better position to see that the vessel should be arrested than we were. So, in essence, we have been deprived of our in rem remedy, and we believe that we should be entitled to proceed on our in rem remedies in the arrested action, and that to do, to not do so, presents a very unjust result, and a result that would not reflect well in the industry. Would you be going forward in the original case, if that's the situation? Well. Or would you be going forward in the Chloe Z. in rem case? I think that presents a – it reverts back to the dilemma that I related to the Court regarding the motion to consolidate. If the motion to consolidate the original action is put into the arrested action by joining it in, then, yes, we're on the original action. If the statute of limitations in the new arrested action is simply barred by equitable estoppel, then we're proceeding on new claims in the second action. If that explains it. All right. I'll reserve the rest of my time. Thank you, counsel. Good morning, Your Honors. Michael Barkoff for the Chloe Z. Good morning. Good morning. In September of 2000, a panel of this Court, including Judge Hopkins, sent this matter back to the district court for finding a fact evidential on only one issue. Was the Chloe Z. estopped from asserting the statute of limitations defense? And, of course, the Court held a two-day hearing. Was the – this tolling issue briefed to that panel? Your Honor, according to plaintiff's motion to recall the mandate, they say they did brief it. We have questions. Those briefs were pretty scant. They clearly briefed it in their motion to recall the mandate. That's at the supplemental excerpt of Record 88 through 91. And I'm sort of in an I think we win either way. It should have been if they intended to rely upon it. And if it was, it is soon presumably in the Court's decision. I think the only place it's – it's succinctly brief is in the motion to recall the mandate. But in that motion, Mr. Ritter argues, we argued this in our underlying brief, and the Court just simply overlooked it. Do you think it had to be raised in the original appeal? Or was it sufficient to brief it there to bring it to the Court's attention? Absolutely. I think it had to be raised in the original appeal, Your Honor. If Mr. Ritter is right now, and I believe he's wrong now, and I'll get to that, but if he is right now and tolling applied, the first panel should have heard that. If that is right, there would have been no need to send this Court back. Apparently, the first panel from your position did not consider that issue. Is that right? I would be presumptuous of me to say what the panel considered. The panel's decision doesn't discuss it. It is – it is alluded to in the briefing. And it certainly should have been raised. This entire process of sending this back to Judge Umpingo and back here for a second visit, a fourth visit, could have been done away with if this argument was right on its merits. And I will get to why it's wrong on its merits. But it should have been raised then, Your Honor. It seems to me your case is better if it was raised. Is that right? It does. And that's why I think it's raised in the – I'm in a bit of a quandary. I want to be candid with the Court. But it is clearly raised in the motion to recall the mandate. The motion to recall the mandate refers back to the original brief, and Mr. Ritter says it was raised in that original brief. There are allusions to this issue in the original brief. And whether the Court considered that or not, presumptuous of me to understand that. We are clearly here under an abuse of discretion standard after the trial in the lower court. Several key findings made by Judge Impingo that absolutely dictate the affirmance of his decision. Finding number one, there was only one misrepresentation that anyone is here talking about. Seriously, that was made in 1993, essentially a hallway conversation. Do you think that the previous panel concluded that if equitable estoppel didn't apply, the statute barred the claim? Yes. Otherwise, there would have been no reason to – What about the tolling problem? The tolling problem, Your Honor, it's a very simple problem. And it involves an understanding of the admiralty procedure. We have the original claim brought in 1994, an in rem claim and an in personam claim.  a claim. This lawsuit was brought. The in rem claim was brought. What didn't happen in that case is service was never perfected. The way you perfect service in an in rem claim is to arrest the vessel. Well, what if the vessel appears? Doesn't that give jurisdiction? Indeed it would. Even after the statute of limitations has run, you – the claim has been brought. In that case, the statute of limitation tolls. And when the vessel appears and you arrest it, the statute of limitations has been met. Now, if the vessel appears, do you still have to arrest the vessel? Beyond that, if the vessel comes in and defends? If you want to obtain security, absolutely. The way you obtain security in an in rem case is to arrest the vessel so you have the precise reason for that procedure so you have the security for the judgment or substitute security in the form of a bond or a letter of undertaking. Well, that answers the question about security. But the real question is about whether the statute of limitations ran. And as far as I can see, we have different statements by Judge Umpingo as to what happened, because at one point he states that he entered the false judgments against the cloisee on July 26, 1994, after the cloisee failed to answer after being duly served. That would be in the in personam case, Your Honor. Cloisee was served both in personam and in rem. And the default judgments were entered in personam, and they were subsequently vacated, of course. But the vessel was used. Why does he speak of a cloisee? They were they were I think he's probably using a colloquialism. It was a cloisee corporation. That was the defendant in the case. Uh-huh. Cloisee incorporated. Now, Your Honor, coming back to your tolling question, because I think it's critical to this case and important to understand, this Court issued a decision in Mann versus American Airlines on the relationship between filing of complaints, tolling of statute of limitations, and service of process. And the issue there was the 120-day provision for the service of process. And the Mann court said when the case is filed, in this case, the 94 case, the statute of limitations is tolled. And it is tolled as long as that case is pending, and if service occurs even after the 120-day provision of Rule 4 and after the statute of limitations, that service is good and the statute of limitations is no bar. In this case, that means had they arrested the vessel, had they perfected service in the original claims, the statute of limitation would have been no bar. But once the judgment is entered in that case, that case is over, that case is done, the statute of limitations is no longer tolled by that prior action, and there's a discussion about that concept in Mann in footnote 3, and the citation from Mann. Scalia. What about if that judgment ignores the tolling problem? Long, Jr. I'm sorry, Your Honor. Scalia. What about it if that judgment that was entered ignores the tolling problem, doesn't deal with it at all? Long, Jr. Well, there wouldn't have been any way to deal with the tolling problem because the in-rim claim, which could have been perfected in July of 1996, was simply let go. It was never pursued. What should have happened in July of 1996, when not only was there no misrepresentation, plaintiff's counsel were told very explicitly what would happen if they continued with their trial. They could have gone out and, as I colloquially put it, put a second set of handcuffs on that vessel. TCW arresting that vessel didn't prevent the plaintiffs from arresting the vessel. You simply get your own arrest warrant, and you now have two marshal stickers on that vessel, both of which have to be taken off before the vessel sails. That could have been done in July of 1996. They would have had their trial, presumably in 1997. This litigation would have been over in 1998. Once they went to judgment, the claims they brought in that case were concluded. The tolling had ceased, and they then filed a new claim. And it is absolutely clear that TCW, by arresting this vessel, didn't start their statute of limitations up again. They were too late into that case. They were too late into that case the day it was filed. They couldn't — Let me understand your authority that they file the in rem claim within the statute. Yes. Now, what is the authority that says they have to arrest the vessel to keep the claim alive? Your Honor, I don't have that authority. It is a — it is a concept of maritime law that you only obtain jurisdiction over a vessel. And I believe we mentioned this in our brief. You only obtain jurisdiction in an in rem case by arresting a vessel. Can I give, Your Honor, the citation of the case with two minutes in my brief? I probably could. Is it in the brief? I believe this is in the brief. Yes, Your Honor. So you're saying no jurisdiction is acquired until it's arrested. That's correct. And service is not perfected until it's arrested. That is precisely how you perfect service. Is that answering the question about when the statute of limitations is stopped? We're conceding a point on that that I think is beneficial to the plaintiffs. We think the statute of limitations continued to toll once the claim had been filed until they arrested the vessel. And if they had arrested the vessel in 1996, that would have been timely. Okay. Why doesn't — why does — why doesn't — why — why do they have to do it in 96? Well, they could have done it in 95. They could have done it in 94. But they had to. Couldn't they do it in 99? Because the case that tolled the 94 case was done. And it was done in August of 96. No. Their case was their own in rem case. That hasn't been decided. Well, their in rem — they had an in personam and an in rem case that they filed in 94. Yes. There was a final judgment entered in that case in 1996. That case was over. In personam. And as originally pled, in rem. And any tolling to the in rem ended when the final judgment was entered. And it is as if it never existed. Well, how can you say it ended when it wasn't rendered in rem against the ship? They would be given the benefit of having filed in 94, Your Honor. And when that case is concluded, the benefit of having filed but not perfected that they're given for the 94 filing is completed. But what's the authority on that? It would be the Mann decision, Your Honor. Mann v. American Airlines. The one you were just discussing. Yes. All right. Yes. Well, we'll look at that. And it is — it is, I think, essential. So this concept that someone else can come in and arrest a vessel and divest them of the ability to do it, that someone else came in and arrested the vessel after the statute of limitations had run for them except in the case that they had filed, their — the equitable estoppel argument, what's interesting about our discussion so far is it relates to this tolling issue, which we believe should have been raised last time around, was raised last time around, and cannot be raised this time around. The equitable estoppel is so very clear that Judge Impingo heard the evidence and got it all just right in his findings of fact. To the extent there was ever a misrepresentation by Mr. McMullen, that misrepresentation was cured by two subsequent things. Number one is the initial disclosures, which identified this as a protection and indemnity policy. And the final one was, of course, the episode four days before they went to trial in the in personam, not yet perfected in rem claims, when they were told precisely what was going to happen, exactly what was going to happen. Could I ask you about another case? Of course. The United States against 2,164 watches, more or less. Are you familiar with that? I believe, in fact, that is the case I was referring to in the brief, Your Honor, that in rem jurisdiction is perfected by the arrest or the seizure of the property. And I read that they held that imperfect or untimely service of process does not deprive the court of subject matter jurisdiction in in rem actions. And I would agree with that, Your Honor. There is no doubt that by 1996, in the other case, service of process would have been untimely under Rule 4. You have 120 days. That case had been pending for two years. But the Court can make exceptions to the 120-day requirement, and had the vessel been arrested, had the marshal sticker been put on it in that case, we would have been hard-pressed to argue no jurisdiction. And then that Court goes on to say that the Court must extend the time for service if the plaintiff shows good cause for the delay. Absolutely. Absolutely. And in the other case, there is no doubt in my mind and no doubt in anyone's mind who would read the transcript of the proceedings below, in that case, if they had said in 1996, Judge Kuhnhauer, we didn't arrest the vessel, but in light of what we've now been told, we think it is imperative that we do arrest the vessel, I have no doubt that that motion would have been granted, and they would have been timely in that case. Well, let me go on to what the Court says, that even without a showing of good cause, the Court could extend it if it conducts a prejudice inquiry. Absolutely. Because there's obviously severe prejudice to the plaintiffs in this case. But, Your Honor, this is not the case we're talking about. The case where they needed to arrest it was the other case. And for that very reason, if they had said the case. You mean the other case. This was the case. The one case that needed to arrest them was where they filed it. It didn't serve the ---- That's precisely correct, Your Honor. And if in 1996, well after the statute had run, in the other litigation, the in rem in personam claim, they had said we need to arrest this vessel, Your Honor, under that authority, they would have been given permission to do that. So they weren't prevented from filing, and that's my point, they weren't prevented from filing an in rem claim because of actions of the defendant. They were told precisely. Well, why should they be prevented now? Because this is another lawsuit. This is a second lawsuit, a follow-on lawsuit, where they are attempting to intervene in a case filed by somebody else. Well, what ended the original in rem claim? I'm sorry, Your Honor? What ended their original in rem claim? Entry of a final judgment in that action ended the original in personam unperfected in rem claim. That's not the case that's on appeal here, of course. This is another case filed by someone else that they tried to get into. If this argument had taken place after an attempt to arrest in 1996, we'd be in a very different posture. Your Honors, again, most of the discussion has been about the tolling issue, and I don't sense that there are any questions about Judge Umpingo's findings of fact. On the equitable estoppel, in this second follow-on piece of litigation, one thing I do note, Judge Reed, a number of years ago, sitting in the district court, you considered an equitable estoppel argument in the Tahoe Regional Planning Agency case. This citation is 829 FEDSUP 1203. And you discussed a couple of cases in your decision. And case number one you discussed in your decision was one where there had been one oral misrepresentation, and the Court looked a bit askance at that equitable estoppel argument. And you then discussed some other cases where there had been one oral misrepresentation. And your Honor said, well, in those kinds of circumstances, we think equitable estoppel may have some merit. And in that particular case, which was on a summary judgment motion, you noted that there had been a pattern of repeated misrepresentations, and you let that case go to the finder of fact following summary judgment. I want to again point out here, we have precisely what Your Honor looked so askance at in your earlier decision, at best, one oral misrepresentation, at best, with no reasonable reliance after that. In 1997, Judge Impingo issued a decision which was very hostile to the CLOE-Z. The CLOE-Z had been accused of doing all kinds of bad things. And this Court, or a panel of this Court, reversed that decision in 2000 and went back to Judge Impingo. And frankly, much to his credit, when he actually heard the evidence, he did a 180. He came to the end, absolutely said there was no misrepresentation that anyone should have reasonably relied upon to forego arresting this vessel. That decision is entitled to great deference, and it should be affirmed. And I'm struggling if there are still questions about this two-lawsuit arresting issue. It is so central, as I say one more time. Well, where would we look to the judgment that you say ended the first NREM action? You would look in the excerpt of record. The judgments were entered in 1996, in August, following the trial by Judge Kunauer. And I can tell you they are in the excerpt of record and with about ten seconds of looking. Is the judgment against the ship as well as against the ---- No, it is not. The judgment is against the shipowner, and that terminated that action in any tolling that would have benefited the plaintiff in that action. How do we know it ended the NREM action, then? The NREM action is still going on, Your Honor. The NREM action is yet the second NREM action. No, the first one. How do we know when that ended? There is a final judgment, headed final judgment, and it was brought on appeal to this Court. But it's not on the NREM action. It's on the impersonum action. That's right. And if you look at footnote three of the American Airlines case, at the point where that case is ended, all bets are off. All tolling stops. I will look at that. Thank you. Thank you very much. Thank you for your argument, counsel. Rebuttal argument? Well, obviously, we agree, that is, my counsel and I, that the filing of the NREM claim tolls the statute, not the arrest. And it is not required upon us that we have to both file the claim and arrest the vessel within the three years. That's an unreasonable rule. But if you affirm this decision, you will have – that's the rule that will emanate from this case. Well, do you have an answer to his – he says we have a case saying that it ended with the judgment in Judge Kunahan's court. It most certainly did not. It most certainly did not. And let me tell you why. The in personam case was tried in July, started on July the 13th of 96, and those two cases ended on July 28th of 96 in personam. We had pending NREM claims at that time. Everyone here agrees, including Judge Umpingo, that those NREM claims were pending at that time. That's why we moved to consolidated letter date, and that's why we eventually intervened. And when counsel says that in July of 96, for some reason, around July the 11th, five – six days after the vessel's already been arrested, we're supposed to go arrest the vessel. Now, there's a Guam local rule, 12A, and it's in your materials, which says you cannot arrest the vessel once it's already been arrested. It says you must intervene, and you cannot start an original complaint. You must intervene into the action. So we would have had to intervene in the NREM action, and we would have had to have asked the court, as we ultimately did, to be admitted into the arrested action, which we were. The only way – and here's the – to me, an absurdity of what has occurred here. In July of 96, another creditor, the mortgage holder, arrests the vessel on July the 5th, 96. We have a pending NREM claim. We should have been secured at that time that the rest – that is, the vessel – is in custody of the court. And we, like all other creditors, are going to be able to lay claim to that vessel and have our priorities listed by the court. That hasn't occurred in this case. All the other 25 creditors have been paid out of the money when that vessel was sold. We have the highest priority, and for 12 years we haven't been paid, because we were not allowed to enter that arrested action. Now, we have gotten four judgments in this case. Those judgments have been affirmed by the Ninth Circuit. We have told diligently to pursue this vessel in both in personam and in rem, and we believe that our claims were pending and that we were entitled to arrest that vessel in the new arrest action and not be part of the estoppel. And there are more active facts in this record for this court to justify finding equitable estoppel. Or another theory that this court feels is appropriate, which evolves around equitable estoppel, possibly fraudulent concealment or possibly equitable tolling. But in any regard, we are entitled to have our claims enforced against the money that's being held in trust in Guam as a priority claimant, as representing individuals that have legitimate claims that for their injuries, severe injuries that occurred over 12 years ago. And just to address slightly counsel's point that we needed to just put another set of handcuffs on the vessel. I think I've addressed that, but that couldn't be done. We had to, under Guam law, intervene. Under the federal rules of civil procedure, I believe we needed to consolidate. We took both actions and ultimately have been denied both opportunities to enter the arrested action. I'm happy to answer any further questions the court has. I don't believe that there's anything further I can say other than I believe this court makes a grave error and a bad rule emanates from the decision of the district court and of the Ninth Circuit if it says that you must both file NREM and you must arrest within three years to preserve your rights. Because in this case, we certainly filed. We didn't arrest. Someone else arrested in front of us. But as long as this rule remains, whenever anyone arrests ahead of a pending NREM claim, that pending NREM claim will be eliminated by a new statute of limitations bar. And that's completely unfair and completely inequitable. And we believe after 12 years of litigation, we're entitled to have the district court's opinion reversed and sent back for further proceedings. Thank you. Thank you. Thank both counsel for their argument. Very interesting case. And it will be submitted for decision.
judges: Noonan, Hawkins, Reed